## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FARMWORKER JUSTICE,

       *Plaintiff*,

    v.                                                                      No. 19-cv-1946 (DLF)

U.S. DEPARTMENT OF AGRICULTURE,

       *Defendant*.

## <u>MEMORANDUM OPINION</u>

Farmworker Justice brings this suit against the Department of Agriculture (the Department) under the Freedom of Information Act, 5 U.S.C. § 552 *et seq*. (FOIA).  Compl., Dkt. 1.  Farmworker Justice alleges that the Department violated FOIA by redacting three sets of records that it provided in response to its FOIA request.  Before the Court is the Department's Motion for Summary Judgment, Dkt. 17, and the plaintiff's Cross Motion for Summary Judgment, Dkt. 18.  For the reasons that follow, the Court will grant the plaintiff's cross motion in part and deny the motion in part; the Court will deny the defendant's motion.

## I.      BACKGROUND

On April 20, 2018, Farmworker Justice submitted a FOIA request to the Department of Agriculture seeking certain records relating to the Department's H-2A visa program.  *See* Pl.'s Resp. to Def.'s Stmt. of Undisputed Facts ¶¶ 1–2, Dkt. 19.  After conducting a search, the Department found 1,319 responsive documents.  *Id.* ¶ 3.  The Department disclosed 702 pages of records in full and 488 pages in part.  *Id.* ¶ 4.  Through the course of this lawsuit, the parties have narrowed this dispute to three sets of redacted records that span twelve pages, all three of which the Department provided to Farmworker Justice with redactions.  *Id.* ¶ 12.

The redacted records at issue include (1) an email from the CEO of McCorkle Nurseries to a Department employee outlining his views on a piece of proposed legislation, *Vaughn* Index at 1 (Bates No. 363–67), Dkt. 17-4; (2) an email exchange between employees in the Department's Office of the Secretary discussing issues related to the November 2017 Farm Labor Survey, *id.* at 2 (Bates No. 373); and (3) minutes from a meeting related to an email exchange between an employee in the Department's Office of the Secretary and employees in the National Agricultural Statistics Service, *id.* at 2 (Bates No. 952–53).  The Department exempted the McCorkle email pursuant to FOIA Exemption 4 and the email exchange and meeting minutes pursuant to FOIA Exemption 5.  *See id.* at 1–2.  The parties filed cross motions for summary judgment, which are now ripe for review.

## II.    LEGAL STANDARDS

Rule 56 of the Federal Rules of Civil Procedure states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When a federal agency moves for summary judgment in a FOIA case, the court views all facts and inferences in the light most favorable to the requester, and the agency bears the burden of showing that it complied with FOIA.  *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009).

To prevail under Rule 56, a federal agency "must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the [FOIA's] inspection requirements."  *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (per curiam) (internal quotation marks omitted).  The agency "must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents,"

*Weisberg v. U.S. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983), and must also explain why any of the nine enumerated exemptions listed in 5 U.S.C. § 552(b) apply to withheld information, *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 147 (D.C. Cir. 2006); *see also Mobley v. CIA*, 806 F.3d 568, 580 (D.C. Cir. 2015) (agency bears burden of justifying application of exemptions, "which are exclusive and must be narrowly construed").

"The peculiarities inherent in FOIA litigation, with the responding agencies often in sole possession of requested records and with information searches conducted only by agency personnel, have led federal courts to rely on government affidavits to determine whether the statutory obligations of the FOIA have been met." *Perry*, 684 F.2d at 126.  Agency affidavits are entitled to a presumption of good faith, *see SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and a court may grant summary judgment based on an affidavit if it contains reasonably specific detail and neither contradictory record evidence nor evidence of bad faith calls it into question, *see Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013).  The "vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

## III.    ANALYSIS

This case concerns whether the Department properly redacted three sets of records, one pursuant to FOIA Exemption 4 and the other two pursuant to Exemption 5.[1]

### A.    Exemption 4

The Department redacted one record under Exemption 4: an email from the CEO of McCorkle Nurseries to the Department outlining his views on proposed legislation. *Vaughn*

---

[1] The plaintiff concedes the adequacy of the Department's search.  *See generally* Pl.'s Cross Mot. for Summ. J.; Pl.'s Stmt. of Undisputed Facts ¶ 7 (responding "undisputed" to the fact that the "[p]laintiff does not challenge the scope and adequacy of USDA's search").

Index at 1 (Bates No. 363–67).  Exemption 4 allows an agency to withhold "trade secrets and commercial or financial information obtained from a person and privileged or confidential."  5 U.S.C. § 552(b)(4).  The Department does not argue that the information contained trade secrets or was privileged, and Farmworker Justice does not dispute that the materials were commercial in nature.  *See* Pl.'s Cross Mot. for Summ. J. at 4; *see generally* Def.'s Mot. for Summ. J.  "Thus, the only issue regarding [the Department's] Exemption 4 claim is whether [the Department] has carried its burden to show that the redacted information is '*confidential*.'"  Pl.'s Cross Mot. for Summ. J. at 4 (emphasis added).

The Supreme Court recently provided guidance as to the definition of "confidential" in the context of FOIA Exemption 4.  *See Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2362 (2019).  The Court concluded that "[t]he term confidential" means "private or secret."  *Id.* at 2363 (internal quotation marks omitted).  The Court went on to describe "two conditions that might be required for information communicated to another to be considered confidential."  *Id.* The first condition is that the information is "customarily kept private, or at least closely held, by the person imparting it."  *Id.*  This means that the information is "known only to a limited few," "not publicly disseminated," or "intended to be held in confidence or kept secret."  *Id.* (internal quotation marks omitted).  The second condition is whether "the party receiving [the information] provides some assurance that it will remain secret."  *Id.*  The Court did not make a holding as to whether both conditions need be met, but it did hold that "[a]t least the first condition has to be," *id.*, as "it is hard to see how information could be deemed confidential if its owner shares it freely," *id.*

In light of these definitions, the McCorkle email does not satisfy the requirements of Exemption 4.  It is undisputed that McCorkle shared the same information he sent to the

Department with the paid members of the Georgia Farm Bureau, *see* McCorkle Decl. ¶ 4, Dkt. 17-5, which includes a membership of approximately 265,000 families.  *See* Def.'s Resp. to Pl.'s Stmt. of Undisputed Facts ¶ 13, Dkt. 23-1.  Having shared the information at issue with over a quarter of a million people, McCorkle cannot be said to have "closely held" it, and the contents were not "secret," or "private."  *Argus Leader*, 139 S. Ct. at 2362–63.  The information in the email was not "known only to a limited few," and it was "publicly disseminated."  *Id.* at 2363. Because the first condition the Supreme Court established in *Argus Leader* cannot be met, the information is not confidential under Exemption 4.  *Id.* at 2362–63.  Any disputes related to the second *Argus Leader* condition—for example, whether McCorkle properly assumed the Department would not disclose the information he provided, McCorkle Decl. ¶ 7—are immaterial, as the Supreme Court made clear that the first condition must be met for a record to be considered confidential.  *Argus Leader*, 139 S. Ct. at 2363.  For this reason, the McCorkle email was improperly redacted under Exemption 4.

### B.      Exemption 5

The Department redacted two sets of documents under Exemption 5: portions of meeting minutes and a paragraph of an email exchange between Department employees.  *Vaughn* Index at 2 (Bates No. 373); *id.* (Bates No. 952–53).  Overall, the Department has not provided sufficient record evidence and explanation for the Court to rule on the Department's Motion for Summary Judgment as to these two documents.

FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  This exemption "incorporates the traditional privileges that the Government could assert in civil litigation against a private litigant—including . . . the attorney-

client privilege, the work-product privilege, and the deliberative process privilege." *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (internal quotation marks omitted).  To invoke the deliberative process privilege, an agency must show that the information withheld is both "predecisional" and "deliberative."  *Id.* at 38 (internal quotation marks omitted).  A document is "predecisional if 'it was generated before the adoption of an agency policy' and deliberative if 'it reflects the give-and-take of the consultative process.'"  *Judicial Watch, Inc. v. FDA*, 449 F.3d at 151 (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).

In *Judicial Watch, Inc. v. U.S. Department of Justice*, 20 F. Supp. 3d 260, 269–72 (D.D.C. 2014), the Court identified several factors relevant to the Exemption 5 inquiry.  The first factor weighs "the timing of the document's release relative to the date the decision is made," *id.* at 269; *see also Nat'l Right to Work Legal Def. & Educ. Found., Inc. v. U.S. Dep't of Labor*, 828 F. Supp. 2d 183, 189 (D.D.C. 2011) ("The timing of a record is important in the analysis; communications made after a decision has been made and designed to explain that decision are not privileged under Exemption 5.").  The second factor considers "the relationship between the author and recipient of the document."  *Judicial Watch, Inc. v. U.S. Department of Justice*, 20 F. Supp. 3d at 270.  The relevant question is "whether a person in the author's position, particularly a subordinate, would typically provide advice to a person in the recipient's position as part of the decision-making process."  *Id.*  The third factor concerns "the nature of the discussion in the challenged document and, specifically, whether it sets out the author's view of options and considerations regarding an agency's policy or, rather, explains or expresses the policy itself." *Id.* at 271.  And for the fourth factor, "courts inquire as to whether the document was responsive to a request, particularly a request from a senior official with decision-making authority to a subordinate in an advisory position."  *Id.* at 272.

6

The Department must also show foreseeable harm from disclosure.  An amendment to FOIA provides that an "agency shall withhold information" under Exemption 5, "only if" "the agency reasonably foresees that disclosure would harm an interest protected by" the exemption or if "disclosure is prohibited by law."  5 U.S.C. § 552(a)(8)(A)(i) (FOIA Improvement Act); *see Judicial Watch, Inc. v. U.S. DOJ*, No. 17-cv-0832, 2019 WL 4644029, at *3 (D.D.C. Sept. 24, 2019).

In light of these standards and the cursory reasoning and support provided by the Department, the Court is unable to determine whether the Department properly invoked Exemption 5 to withhold portions of the meeting minutes and the email exchange.  Conclusory assertions in the Department's declarations and briefing that the materials were predecisional and deliberative are insufficient.  The Department has not provided specific record support, nor has it engaged with the relevant factors under the case law.

The Department's declaration, Graves Decl., Dkt. 17-3, does not adequately explain, for example, the relationship between the email discussing the November 2017 Farm Labor Survey and a future agency decision, such that the Court can conclude that the discussion about the already-conducted November 2017 survey is *pre*decisional, *see id.* ¶ 15.  This is critical, as Exemption 5 is inapplicable where records merely "explain actions an agency has already taken." *Ryan v. Dep't of Justice*, 617 F.2d 781, 791 (D.C. Cir. 1980).  Rather, "Exemption 5 applies only to communications *before* the adoption of an agency policy; communications that promulgate or implement an established policy are not privileged." *Id.* (emphasis added).  The Department merely notes that the redacted material related to "*potential* policy considerations *involving* [the Adverse Effective Wage Rate]."  Graves Decl. ¶ 15 (emphasis added).  But it provides no further explanation as to how, or to what extent, this discussion was related to a future agency decision,

nor does the Department explain why the discussion was not merely one of existing policy relating to the November 2017 survey.  *Id.*

Further, the Department has not explained the relative hierarchical roles of those involved in the discussions, which is a critical factor in determining whether the materials are deliberative, *see Judicial Watch, Inc. v. U.S. Department of Justice*, 20 F. Supp. 3d at 270.  The Department explains that one of the presenters at the meeting was "Senior Advisor to the Secretary, United States Department of Agriculture," *see* Pl.'s Ex. 1, Dkt. 18-1 (showing the employee's title in her email signature); Def.'s Opp'n at 6, Dkt. 24, and states (without citation to the record) that the other presenter was "a Department of Labor employee," Def.'s Opp'n at 6.  But the Department does not indicate whether the other participants in the meeting were subordinate to these individuals, or whether they requested the meeting.  *See Judicial Watch, Inc. v. U.S. Department of Justice*, 20 F. Supp. 3d at 270 (including both as factors in the Exemption 5 inquiry).

So too, the Department did not adequately support its assertion that certain materials were exempt from disclosure under the attorney-client privilege.  The Department states that the redacted text "relays advice provided by USDA counsel to the Office of the Secretary during its exploration of options relating to a regulatory issue," Graves Decl. ¶ 17, but provides little more.  Attorney-client privilege covers "confidential communications from clients to their attorneys, as well as communications from attorneys to their clients containing confidential information supplied by the client."  *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 955 F. Supp. 2d 4, 20 (D.D.C. 2013).  For the privilege to apply, the Department cannot simply state that an attorney was involved in a discussion.  It "must establish each of the following essential elements: (1) the holder of the privilege is, or sought to be, a client; (2) the person to whom the communication is made is a member of the bar or his subordinate and, in connection with the communication at issue, is acting in his or her capacity as a lawyer; (3) the communication relates to a fact of which the

8

attorney was informed by his client, outside the presence of strangers, for the purpose of securing

legal advice; and (4) the privilege has been claimed by the client." *Judicial Watch, Inc. v. DHS*, 841

F. Supp. 2d 142, 153–54 (D.D.C. 2012).  The Department has not provided evidence in support of

these elements.

Finally, the Department did not articulate a specific foreseeable harm that was connected

to the underlying redacted materials.  The Department instead provided a generalized statement

of harm that could apply to any records exempted under Exemption 5.  *See* Graves Decl. ¶ 16

("If these predecisional, deliberative communications were to be routinely released to the public,

USDA and other Executive Branch employees would be much more cautious in their discussions

with each other, and in candidly discussing and providing all pertinent information and

viewpoints in a timely manner to agency decision-makers.").  *Contra Machado Amadis v. United

States Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020) (accepting an agency's explanation of

foreseeable harm where it "specifically focused on the information at issue" in concluding "that

disclosure of that information would chill future internal discussions" (internal quotation marks

omitted)).  Courts in this district frequently reject generalized explanations of harm removed

from the specific information at issue.  *See, e.g.*, *Danik v. U.S. Dep't of Justice*, No. 17-cv-1792,

2020 WL 2838584, at *5 (D.D.C. May 31, 2020); *Ctr. For Investigative Reporting v. U.S. Dep't

of Interior*, No. 18-cv-599, 2020 WL 1695175, at *4–5 (D.D.C. April 7, 2020); *Judicial Watch,

Inc. v. Dep't of Justice*, No. 17-cv-0832, 2019 WL 4644029, at *5 (D.D.C. Sept. 24, 2019);

*Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 375 F. Supp. 3d 93, 100 (D.D.C. 2019).  The

Court will do the same here.  "If the defendants wish to establish foreseeable harm when they

supplement the record, they will need to provide context and insight into the specific decision-

making processes or deliberations at issue, and how they in particular would be harmed by

disclosure." *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 107 (D.D.C. 2019).

### C.    Segregability

Given the dearth of explanation regarding the redacted portions of the disputed documents, the Court is unable to determine at this time whether the Department fully satisfied its segregability obligations.  FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  The segregability requirement does not apply to non-exempt material that is "inextricably intertwined" with exempt material, *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977), and agencies are entitled to a presumption that they disclosed all reasonably segregable material, *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).  Without adequate explanation of the redacted information, however, the Court is unable to determine whether non-exempt material was appropriately segregated.

### CONCLUSION

For the foregoing reasons, the Department's Motion for Summary Judgment is denied, and the plaintiff's Cross Motion for Summary Judgment is granted in part and denied in part.  A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

March 4, 2021